Hillsborough,
June 28, 1928.

SOPHIE E. TOUGH *v.* CLARETTA A. NETSCH *& a.*

JOHN NETSCH *v.* JOHN NETSCH, JR, *& a.*

SOPHIE E. TOUGH *v.* MANCHESTER BUILDING &
LOAN ASSOCIATION *& a.*

*Arthur B. Hayden* and *Samuel J. Dearborn* (*Mr. Hayden* orally), for John Netsch.

*George A. Wagner,* for the Manchester Building and Loan Association.

BRANCH, J. 1. The defendant argues that the plaintiff should not have judgment in this case because of the rule that equity will not lend its aid to enforce either a penalty or a forfeiture or to divest an estate for breach of condition subsequent. *Ricker* v. *Blanchard,* 45 N. H. 39, 47; *Smith* v. *Jewett,* 40 N. H. 530, 534. It is unnecessary to inquire at this time whether the unqualified language used in these cases correctly states the law (see 21 C. J., Tit. Equity, s. 81), for the obvious answer to the defendant's argument is that the plaintiff is not seeking equitable aid for this purpose. The action was properly brought at law by writ of entry (*Walker* v. *Walker,* 63 N. H. 321; *Davison* v. *Davison,* 71 N. H. 180), and he seeks therein to enforce his legal rights under a valid contract which equity cannot control or set aside. *Eastman* v. *Batchelder,* 36 N. H. 141, 150. Although the referee reports that he "treated the plaintiff's writ of entry as a bill in equity," he had no power to transform the plaintiff's demand for judgment at law into a prayer for equitable relief to the prejudice of

the plaintiff. The question whether equity should intervene by positive action to prevent a forfeiture depends upon other factors which are hereinafter considered.

2. The contention of the defendant that, having acquired the rights of John, Jr, and Claretta in the property, it ought to be allowed to assume their obligation to support the plaintiff and thus avoid a forfeiture for breach of the condition of the deed, cannot be adopted. It is the law of this state, too firmly established by repeated decisions to be changed, that the obligation created by a contract for support is a personal one which cannot be assigned by the obligor without the consent of the other party. *Gotham* v. *Gotham*, 55 N. H. 440; *Rollins* v. *Riley*, 44 N. H. 9, 14; *Bethlehem* v. *Annis*, 40 N. H. 34; *Eastman* v. *Batchelder*, 36 N. H. 141; *Barker* v. *Cobb*, 36 N. H. 344; *Flanders* v. *Lamphear*, 9 N. H. 201. See also *Pattee* v. *Boynton*, 73 N. H. 525. In the case of *Eastman* v. *Batchelder, supra,* it was specifically held that the grantee of the obligor in such a situation could not take possession of the premises and carry out the obligation without the consent of the obligee, and in the opinion it is said "they could not take possession of the premises and redeem the mortgage, because the contract was personal with Tasker [the obligor] and did not embrace them." It does not appear that the soundness of this decision has ever been questioned in this state, and so far as the case of *Joslyn* v. *Parlin*, 54 Vt. 670, cited by the defendant, lays down a different rule, it cannot be followed.

3. Running through defendant's argument, there also appears a suggestion that the equities of the Building & Loan Association are, for some reason, superior to those of John, Jr, and that it may be entitled to relief against the father even though the son's rights be forfeited. There is no justification for this contention in the law as it has been settled by the decisions in this state cited above. The only rights which the association took under its mortgage were those which John, Jr, and Claretta could convey. The father was a stranger to the transactions of his son and daughter-in-law with the defendant, and his rights could not be prejudiced by them. The foreclosure of the mortgage in no way affected his right to "enter for condition broken at any time, have possession of the property, and take advantage of the forfeiture." *Gotham* v. *Gotham, supra,* 441. "It is a general rule of law that he who enters for condition broken becomes seized of his first estate, and thereby avoids all intermediate charges and incumbrances." *Barker* v. *Cobb*, 36 N. H. 344, 348. It therefore follows that the association's only right to relief must be derived

through John, Jr, and unless he still has some rights in the premises, the defendant's exceptions must be overruled.

4. A more difficult question is presented by the contention of the defendant "that no breach of condition has been shown which would warrant a judgment for the plaintiff." The argument is in substance that the evidentiary facts found by the referee do not justify his final conclusion, which was specifically stated to be based thereon, "that John, Jr., and Claretta had broken the condition of their deed and that John, Sr., was entitled to, and had entered upon said premises for condition broken." In making this contention the defendant invokes the aid of equity to protect it against a forfeiture, and it is clearly entitled to have its rights determined by an application of equitable principles, for while the plaintiff's action is properly at law, it is well settled that, under our practice, an equitable defence may be set up under the general issue in answer to a writ of entry. *Cutting* v. *Pike*, 21 N. H. 347, 351.

Relief against forfeiture is an independent ground of equity jurisdiction. *Kann* v. *King*, 204 U. S. 43, 54. It is exercised upon the principle that a party having a legal right shall not be permitted to avail himself of it for purposes of injustice or oppression (*Noyes* v. *Anderson*, 124 N. Y. 175, 179), but in determining when relief shall be given, the equitable doctrines of waiver, estoppel, laches, fraud, accident and mistake are generally applied. See 21 C. J., Tit. Equity, *ss.* 76–82. The significance of the facts found by the referee must, therefore, be considered with these principles in view.

The referee makes a definite finding that "in June, 1924, when Claretta left John, Jr. she abandoned the undertaking to support John, Sr., as far as she was concerned." It must be held, however, that any right to enter for condition broken which then accrued to the plaintiff was either waived by him or barred by his laches, since it clearly appears that he took no action for more than a year after Claretta's departure and during that time continued to board in the De la Rive family at the expense of his son. This conduct clearly indicates the understanding of both parties that the obligation to support the father was primarily that of the son, and that Claretta's obligation was an unessential incident thereto.

From the findings of the referee it is plain that up to the time when the present suit was commenced, in July, 1925, John, Jr, had not abandoned the undertaking to support his father. It is found that the plaintiff made no objection to the arrangements which John, Jr made for his board with the De la Rives; that he seemed satisfied to

board with the De la Rive family and that when John, Jr. went to Keene in January, his father's board was paid up to March 1, 1925. Thereafter in the months of February, March, April, May and June, he made five payments to De la Rive of $25 each, which, as he understood it, paid his father's board up to August 1, 1925. His final payment of $50 was made January 5, 1926, on account of board and $20 for a suit of clothes which De la Rive had bought for the plaintiff.

The referee finds that "after John, Jr., left Manchester and went to Keene, he gave John, Sr., very little, if any, personal attention, leaving it to the de la Rives to supply him with anything he needed, promising to settle with them in the end. The de la Rives lost confidence in his ability to carry out his promises and did not furnish John, Sr., with clothing such as he was entitled to have." The referee also finds that after January, 1925, John, Jr "did not give John, Sr., the personal care and attention that John, Sr., should receive under the condition of the deed. He did not visit John, Sr., and ascertain his condition and the condition of the account between himself and De la Rive as to the board and clothing of John, Sr. John, Jr., left the care of John, Sr., to the discretion and judgment of the de la Rives." There is no finding that the father made any objection to the existing arrangement or to his treatment by the De la Rives until the association began to take measures for the protection of its mortgage interest. There is no finding that he was not, in fact, properly provided for up to the time when the present action was commenced. The referee does not make any finding as to the time when the De la Rives lost confidence in John's ability to pay or when John, Sr began to lack "clothing such as he was entitled to have." In view of the fact that in January, 1925, plaintiff's board was paid in full to March 1, and that John, Jr made regular payments of $25 each in the months of February, March, April, May and June, no reason is apparent why the De la Rives should have lost confidence in his ability to pay before this suit was commenced, and the statement of the referee that "all the transactions and acts of the parties down to the date of the hearing were received in evidence," points to the conclusion that such failure as there may have been to provide suitable clothing took place after July, 1925.

If the son's failure to give his father personal care and attention constituted a technical breach of the condition of the deed, equity would not permit a forfeiture on this account in view of the father's consent to the general arrangement, and his failure to protest against his son's neglect, but it is not clear what the referee meant by his

finding that John did not give his father "the personal care and attention that John, Sr., should receive under the condition of the deed." If by this finding we are to understand that the referee interpreted the language of the condition to mean that John, Jr., was expressly bound to give his father personal care and attention, he was in error. The condition contains no stipulation of this kind. It only requires that the "grantees shall provide" the plaintiff "with all the reasonable necessities of life . . . as long as I may live." If it was the expectation of the parties at the time when the deed was given that the plaintiff would make his home with John and Claretta and thus receive some personal care and attention, that expectation had been dissipated long before the son went to Keene, and a substitute arrangement had been made with the approval of the plaintiff, which necessarily precluded the kind of personal care and attention which he might have received if he had made his home with his son. Under these circumstances equity will not permit a stipulation for personal care and attention to be read into the condition of the deed in order to support a forfeiture of John's rights. *Dearborn* v. *Dearborn*, 9 N. H. 117.

If by this finding the referee undertook to give effect to the rule of law set forth above that the obligation to support is personal, he was equally in error. The rule has reference only to the nature of the obligation; it does not purport to define its extent or to regulate the manner of its performance. See *Rhoades* v. *Parker*, 10 N. H. 83. These are matters which may be as various as human desires and are determined solely by a proper construction of the terms of the agreement. It, therefore, appears that no facts are found by the referee which justify a conclusion that when the present suit was commenced, John, Jr had committed a substantial breach of his obligation which entitled the plaintiff to enter on account of condition broken.

It is true that after January 5, 1926, John, Jr appears definitely to have abandoned his undertaking to support his father, his reason being that he "thought the whole property and everything was gone and I was wiped out." But the legal position of the plaintiff in the present action was not improved by a breach committed by the son after the suit was commenced. The plaintiff's writ spoke as of the time when it was issued and he could not support it by proving at the trial that a right of action had accrued to him after the suit was commenced. This is elementary law, but it is one of the points specifically decided in *Eastman* v. *Batchelder, supra,* and also in the cases of *Child* v. *Powder Works*, 44 N. H. 354, and *Parks* v. *Ingram,*

22 N. H. 283, 293. By considering evidence of occurrences down to the date of the hearing, the referee fell into an error which appears seriously to have prejudiced the defendant's rights.

It is by no means clear, however, that John, Jr, might not be entitled to relief from a forfeiture in equity even if his conduct down to the date of the hearing were considered. The defendant suggests in its brief that John, Jr, at the trial expressed his continued willingness to carry out his undertaking so far as he was able to do so. The reason given for his failure to make payments after January, 1926, viz, that he thought the whole property was gone and that he was wiped out, expresses a belief which he might reasonably have entertained in view of the action of the association in foreclosing its mortgage and that of his father in commencing the present suit. His conclusion that he had been wiped out was a mistaken one, however, and from the consequences of this mistake he might perhaps receive equitable relief even at this time. As the case is now presented, however, no decision upon this point is necessary.

It follows from the foregoing considerations that the defendant's exception to the entry of judgment in this case in accordance with the recommendations of the referee must be sustained. No reason is perceived, however, why the controversy may not be disposed of in the superior court by such equitable orders as justice may require without imposing upon the plaintiff the burden of bringing a new suit. It is plain that the defendant can protect its mortgage interest only through John, Jr by furnishing him with the funds necessary to enable him to carry out his undertaking to support his father, and by paying off the tax liens which have accrued against the property. If John, Jr and the association are willing to coöperate, there seems to be no reason why the equitable interests of all parties cannot be protected. In other words, the plaintiff may be suitably supported under the direction of his son in accordance with the condition of the deed, and the property preserved for the benefit of the association and John, Jr, as their interests may appear. It is unnecessary to consider at this time whether, if John, Jr refuses to coöperate, the association may maintain a bill for specific performance.

*Exception sustained: case discharged.*

PEASLEE, C. J., did not sit: SNOW, J., was absent: the others concurred.