503 So.2d 1201 (1987)
NEW ORLEANS GREAT NORTHERN RAILROAD CO., et al.
v.
Margie W. HATHORN, et al.
No. 56247.
Supreme Court of Mississippi.
March 4, 1987.
Patrick H. Zachary, Zachary & Zachary, Hattiesburg, John T. Armstrong, Jr., Hazelhurst, J. Robert Ramsay, Bryant, Stennis & Colingo, Hattiesburg, for appellants.
Lampton O. Williams, Williams, Williams & Montgomery, Poplarville, Richard D. Foxworth, Columbia, for appellees.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.,
ANDERSON, Justice, for the Court:
This is an appeal from a decree of a Special Chancellor of Marion County entering summary judgment for the appellees, plaintiffs below, on their complaint and finding that appellants, defendants below, had breached a condition subsequent in the deed to the lands in dispute, triggering a right to re-entry on the part of the plaintiffs and cancelling the title of defendants to the disputed land. We reverse and remand for a trial on the merits.
On July 30, 1907, Missouri Foxworth and five others executed a deed conveying three tracts of land totalling 12.91 acres in Marion County, MS to the New Orleans Great Northern Railroad Company (hereinafter NOGN). Most of the land involved is located in the Town of Foxworth. In consideration of the transfer, the deed contained the grantors agreement to:
release, discharge and acquit said New Orleans Great Northern Railroad Co., its successors and assigns, from any and all liability for and on account of the construction, maintenance, and operation of the railroad thereover and for using, enjoying and appropriating the land hereby conveyed to all or any such railroad purposes as may be desired forever.
It further provided:
Should the New Orleans Great Northern Railroad Co., its successors or assigns, abandon the depot that is to be built at this point, the lands described above is [sic] to revert to the grantors herein.
The tracks of the old NOGN now belong to the Illinois Central Gulf Railroad. It is well known that railroading has declined in the twentieth century, and the railroad serving Foxworth did not escape the hard times. In 1962 the Public Service Commission gave permission for the railroad to *1202 close the depot at Foxworth, thus setting the stage for a decade of litigation over railroad services to that community.
This is the second suit involving the Foxworth deed. In 1979 Justice Cofer, writing for the Court, held that the depot requirement in the 1907 deed was a condition subsequent rather than a reverter and the right of re-entry was not triggered by the closure of the depot or by the conveyance of part of the property to third parties, since the railroad was still in "substantial compliance" with the condition. We noted that the grantors' "manifest intention was to obtain railroad services for themselves and for the Foxworth community, and not merely to have a depot building... ." Hathorn v. Illinois Central Gulf RR Co., 374 So.2d 813, 814 (Miss. 1979).
The plaintiffs in the present action (who are, with minor exceptions, the same as those in Hathorn I) argue that since railroad services to Foxworth have been curtailed still further, and the greater part of the land has now been conveyed away, the railroad is no longer in substantial compliance and a right to re-enter has arisen in them. The railroad no longer has an agent at Foxworth; nor does it maintain any structure there except a "way bill box" in which requests for service can be placed.
When the cause came on to be heard before the Special Chancellor, both sides moved for summary judgment. The chancellor used the pleadings and affidavits to prepare lists of disputed and undisputed facts. He noted that there was considerable controversy over the quality and frequency of rail service to Foxworth. However, he observed that it was not disputed that "almost all" of the land in question had been conveyed to third parties, and concluded that as a matter of law this constituted an abandonment of the grant. He further held that the railroad's loss of control over the property made it impossible for the railroad to guarantee that the property would be used for "railroad purposes." Thus, he held that the condition subsequent had been breached, and he gave summary judgment to the plaintiffs.
It is obvious from the record that the chancellor considered the abandonment issue to be so decisive as to entitle the plaintiffs to judgment as a matter of law, even though many other issues were in dispute.
Summary judgments are governed by Rule 56, Mississippi Rules of Civil Procedure, which is neatly summarized by its own official comment. "A motion for summary judgment lies only where there is no genuine issue of material facts, summary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." See Mississippi Moving & Storage Co. v. Western Electric Co., Inc., 498 So.2d 340, 342 (Miss. 1986).
The record in this case reveals numerous factual controversies that cannot be resolved from the pleadings and affidavits. Most deal with whether the railroad was offering reasonable services to the Foxworth area. It is disputed how often the railroad's roving service agent comes to Foxworth, how often trains stop at Foxworth, and the extent the piggy-back tracks are still being used. As for the granted lands, the chancellor's opinion effectively recognizes that there is a dispute as to whether the lands now in the hands of third parties are being used for "railroad purposes." However, he simply resolved the dispute in favor of the plaintiffs by saying that the "defendant railroad companies have wholly failed to provide safeguards to assure the use to which the land and all businesses located thereon would be devoted to a railroad purpose."
The chancellor also effectively tried the issue of whether or not the services offered to the Foxworth community were reasonably in compliance with the deed, saying that the assertions of substantial compliance "may have been true under the facts and circumstances existing prior to 1979; it is not true under today's facts and circumstances."
Evidently, the chancellor considered that the disputed facts were not "material" for Rule 56 purposes, since in his view the *1203 abandonment issue required judgment for the plaintiffs in any case. Dispute as to non-material facts is not sufficient to avert a summary judgment. Vickers v. First Miss. National Bank, 458 So.2d 1055, 1061 (Miss. 1984).
On the abandonment issue, the chancellor relied heavily on Wilczinski v. Louisville, New Orleans, and Texas Railway Co., 66 Miss. 595, 6 So. 709 (1889). Wilczinski granted the railroad a right-of-way over his plantation. The contract contained the following provision:
Said right-of-way and two acres of ground are conveyed for and are to be used for railroad purposes only and none other, and are to revert to the party of the first part when said company ceases to use them. 66 Miss. at 605, 6 So. at 709.
Two other planters obtained permission from the railroad to build a shed on the right-of-way for the storage and shipping of cotton seed. Wilczinski, who was also in the cotton business, wanted no competition on his own grant, and sued the planters and the railroad for an injunction. The Court found that the erection of the competing cotton seed facilities was not a "railroad purpose" as intended by the parties.
The chancellor in the present case reasoned that because the railroad had continually relinquished control of the Foxworth property to third parties, they were abandoning the property by opening it to a potential non-railroad use. He was also of the opinion that the reservation of easements was not sufficient to compel the use of the land for railroad purposes. Therefore he concluded that the railroads had abandoned the subject property and violated the condition subsequent.
There appear to be two major flaws in this reasoning. First, the wording of the instrument in Wilczinski was significantly different from that in the present case. There the pertinent clause said the property or lands granted "are to be used for railroad purposes only and none other and are to revert to the party of the first part when said company ceases to use them." In the present case, by contrast, the 1907 deed contained no provision that the subject properties must be used only for railroad purposes; nor does it restrict their use to the railroad company.
Second, and perhaps more importantly, a condition subsequent is not necessarily breached by the conveyance of the land. A condition subsequent is attached to the title and runs with it against a subsequent grantee with actual or constructive notice of the condition. 26 CJS Deeds, § 150. In this respect, a condition subsequent is treated as a covenant in the deed running with the land. Mississippi follows the rule that it runs with the title. E.g., Perry v. Bridgetown Community Asso., Inc., 486 So. 1230, 1234 (Miss. 1986); Vinson v. Meridian Masonic Temple Building Asso., 475 So.2d 807, 809 (Miss. 1985); Miss. State Highway Commission v. Cohn, 217 So.2d 528, 532 (Miss. 1969). Thus, a showing that the property has been conveyed is not sufficient to establish the right of re-entry on the part of the grantor; there must also be a showing that the grantees who took subject to the condition have breached it. It does not appear from the pleadings and affidavits that such a breach is undisputed; it could be determined only on a full trial.
The appellees advance two other arguments. First, they claim that the appellants are estopped from denying the superiority of appellees' title since after judgment, two of the appellants, Sidney Burch and Carolyn A. Burch, produced a warranty deed from one of the appellees, Rosa B. Ginn Stump, purporting to convey her interest in some of the disputed land. The appellees contend that as a result of this purchase, appellants are estopped from denying the superiority of their title. Their position is that a party in a land dispute who buys title from his adversary has recognized the superiority of his opponents' title. They rely on a line of cases dating from Eddy v. Clayton, 44 So.2d 395 (Miss. 1950). However, none involved the allegation of the breach of a condition.
Finally, the appellees argue that the rail service now afforded Foxworth cannot be in substantial compliance with the deed. They rely on Town of Sumner v. Illinois Central RR., 236 Miss. 342, 111 So.2d 230 *1204 (1959), that involved substantial compliance with Section 187 of the Mississippi Constitution which forbids a railroad from building tracks within three miles of a county seat without passing through it. In that context, this Court held that substantial compliance required the maintenance of a fully staffed depot with a full range of railroad services. However, Town of Sumner has no application to the case at bar. The rules of construction are different. Conditions subsequent are not favored by the law and provisions containing them are construed very strictly. E.g. Yazoo and Miss. Valley RR v. Lakeview Traction Co., 100 Miss. 281, 289, 56 So. 393, 395 (1911). Thus, the fact that a facility might not constitute "substantial compliance" with Section 187 does not prove that it would not be "substantial compliance" within the terms of the deed restriction.
In summation, the undisputed issues of material fact were not such as entitled the plaintiffs to judgment as a matter of law. This was simply not a case for summary judgment. Accordingly, the decree granting summary judgment must be vacated, and the cause remanded for a trial on the merits.
REVERSED AND REMANDED FOR TRIAL ON THE MERITS.
WALKER, C.J., and ROY NOBLE LEE and HAWKINS, P.JJ. and DAN M. LEE, PRATHER, ROBERTSON and GRIFFIN, JJ., concur.
SULLIVAN, J., not participating.