RED HILL OUTING CLUB

v.

ROBERT HAMMOND & a.

December 31, 1998

*Martin, Lord & Osman, P.A.*, of Laconia (*Charles V. Moser* on the brief and orally), for the plaintiff.

*Law Offices of David J. Killkelley*, of Laconia (*David J. Killkelley* on the brief and orally), for the defendants.

HORTON, J. The defendants, David and Elizabeth Hammond and their son, Robert Hammond, appeal the Superior Court's (*Fauver,*

J.) decision denying them right of re-entry and possession of land they deeded to the plaintiff, Red Hill Outing Club (club), subject to a condition subsequent. We affirm.

David Hammond purchased land in Moultonboro in 1956 known as Red Hill, which was subsequently cleared for use as a ski slope. Hammond installed a rope tow and participated in forming the club for the purpose of operating the ski slope. From 1969 to 1979, the club leased Red Hill. During this period, it operated the rope tow and provided free ski lessons to members and Moultonboro residents.

In 1979, David and Elizabeth Hammond conveyed Red Hill by quitclaim deed to the club for nominal consideration. The deed contained the following condition:

> The Grantee . . . covenants and agrees that the within described premises shall be maintained and made available to residents of Moultonboro as a ski slope in accordance with its now existing by-laws. If the Grantee fails to provide such skiing facilities to Moultonboro residents for a period of two consecutive years then a breach of this covenant has occured [sic], provided such failure was not caused by reason of an act of God, such as inadequate snowfall. In the event the Grantee . . . breach[es] [this covenant], the Grantor shall have the right to re-enter and take possession of said premises . . . .

From 1979 to the mid-eighties use of the ski slope grew. But the popularity of other ski areas, changing interests of families who had previously frequented the slope, inadequate snowfall in some years, and the waning leadership of the club resulted in a noticeable decline in its use after 1988. Consequently, the club ceased offering free ski lessons after the winter of 1988-1989, and did not obtain a rope tow permit for the ski seasons of 1992-1993 and 1993-1994. Red Hill was closed to all skiing during the winter of 1993-1994.

In October 1994, the defendants filed a notice of re-entry and possession, claiming that the club had breached its condition by failing to provide skiing facilities at Red Hill for two consecutive years. In response, the club brought action against the Hammonds, seeking, *inter alia*, declaratory judgment regarding the parties' relative rights.

After a bench trial, which included a view, the trial court determined that the condition subsequent should be strictly construed. Therefore, to comply with its obligation to provide Red Hill as "skiing facilities," the club needed only to "maintain and make

available the premises . . . as a ski slope." Accordingly, the court found that the club had not substantially breached the condition because it had remained in existence as a club and continued to maintain and offer use of the hill as a ski slope. It found that any failure of the club to provide ski facilities from February 1993 to October 1994 was not sufficient in duration to constitute a breach.

On appeal, the defendants argue that the trial court erred by: (1) strictly construing the condition subsequent; (2) construing any ambiguity in the deed against the grantor; (3) finding that the club did not substantially breach the condition subsequent; and (4) refusing to consider evidence of a breach occurring after the club instituted its action.

The defendants first argue that the trial court should have construed the condition subsequent by determining the parties' intent in light of the surrounding circumstances at the time of the conveyance. They contend that by strictly interpreting the condition to refer only to maintaining and making available the ski slope, the trial court ignored the parties' original intent to include the operation of a licensed ski tow and provision of free ski instruction within the club's obligation to provide "skiing facilities." Although the defendants acknowledge that strict construction of conditions subsequent has long been the rule in this State, they urge us to update this rule consistent with the modern trend in contract interpretation.

■ The construction of deeds is an issue of law for this court. *See Baker v. McCarthy*, 122 N.H. 171, 174-75, 443 A.2d 138, 140 (1982). The general rule in interpreting a deed is to determine the parties' intent at the time of conveyance in light of the surrounding circumstances. *See Chao v. The Richey Co., Inc.*, 122 N.H. 1115, 1117, 455 A.2d 1008, 1010 (1982). As the defendants correctly note, formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute. *See Therrien v. Therrien*, 94 N.H. 66, 66-67, 46 A.2d 538, 538-39 (1946); 4 W. JAEGER, WILLISTON ON CONTRACTS § 614, at 584-97 (3d ed. 1961). Thus, for example, when the interests of a changing society persuaded us that restrictive covenants were valuable land use planning devices rather than restraints on the use of land, we discarded the rule of strict construction in favor of ascertaining the parties' intent in light of the surrounding circumstances at the time of a covenant's creation. *See Joslin v. Pine River Dev. Corp.*, 116 N.H. 814, 816-17, 367 A.2d 599, 601 (1976).

We are not convinced, however, that we should apply the general rule of construction to conditions subsequent. "The [grantor of a fee simple subject to condition subsequent] shall have his exact legal right, but no more." *Emerson v. Simpson*, 43 N.H. 475, 478-79 (1862). "[T]o defeat an estate of his own creation, [he] must bring the [grantee] clearly within its letter." *Id. See generally City of Lincoln v. Townhouser, Inc.*, 534 N.W.2d 756, 759 (Neb. 1995). A fee simple subject to condition subsequent is a conveyance of land in which the grantor expressly retains the right of re-entry upon breach of a stated condition, the exercise of which results in a forfeiture of estate for the grantee. *See Hagaman v. Board of Education of Woodbridge TP.*, 285 A.2d 63, 66 (N.J. Super. Ct. App. Div. 1971). *See generally* 1 R. POWELL & P. ROHAN, POWELL ON REAL PROPERTY § 188, at 13-56 to 13-75 (1998). Because of the drastic consequence of a breach, we have traditionally viewed conditions subsequent with disfavor. *See, e.g., Emerson*, 43 N.H. at 477; *cf. DeBlois v. Crosley Bldg. Corp.*, 117 N.H. 626, 629, 376 A.2d 143, 145 (1977).

The passage of time has failed to increase the social value of conditions subsequent. Unlike restrictive covenants, conditions subsequent continue to be viewed with disfavor because of their potential to cause a forfeiture of land. *See, e.g., MacDonald Properties v. Bel-Air Country Club*, 140 Cal. Rptr. 367, 371 (Ct. App. 1977). We disagree with the defendants that the consequences of a forfeiture are "no greater" than those of specific performance of a contract or an attachment on property. A forfeiture by nature is a drastic remedy because in most cases it is widely disproportionate to the breach. *See* Korngold, *For Unifying Servitudes and Defeasible Fees: Property Law's Functional Equivalents*, 66 TEX. L. REV. 533, 551 (1988). In addition, restricted use of the land for a potentially indefinite duration substantially diminishes the land's marketability and development, ultimately to the detriment of the community. *See* Powell, *Defeasible Fees and the Nature of Real Property*, 40 KAN. L. REV. 411, 418-19 (1992). Neither specific performance, an equitable remedy at the court's discretion, *see Shakra v. Benedictine Sisters*, 131 N.H. 417, 421, 553 A.2d 1327, 1330 (1989), nor attachment, applied to secure payment of judgment should a plaintiff prevail, *see* RSA 511:1 (1997), evokes the hardships associated with a condition subsequent.

The defendants, relying on *North Hampton District v. Society*, 97 N.H. 219, 84 A.2d 833 (1951), contend that the terms of a defeasible fee should be construed in light of surrounding circumstances. While we agree that *North Hampton* appears to extend the general

rule of contract construction to a deed involving a fee simple determinable, *id.* at 221, 84 A.2d at 834, we do not read its holding so broadly as to apply to the case before us. *North Hampton* addressed only the issue of the nature of an estate created by language in a deed, *id.*, not the operation and effect of the particular terms of a forfeiture clause. *Compare DeBlois*, 117 N.H. at 629, 376 A.2d at 145, *with Gage v. School-District*, 64 N.H. 232, 234, 9 A. 387, 388 (1886). Here, there is no dispute that the deed contains a condition subsequent. The question before us is the scope of the condition subsequent. *North Hampton* thus addresses aspects of deed construction that do not concern us here.

The overwhelming majority of courts in other jurisdictions also have continued to strictly construe conditions subsequent in deeds with regard to their capacity to work a forfeiture. *See, e.g., Willhite v. Masters*, 965 S.W.2d 406, 409 (Mo. Ct. App. 1998); *C Company v. City of Westbrook*, 269 A.2d 307, 309 (Me. 1970), *abrogated on other grounds by Herzog v. Irace*, 594 A.2d 1106, 1108 (Me. 1991). Our position conforms to the great weight of authority from our sister States.

■ Our decision today does not abrogate the guiding rule that the intent of the parties to a deed is to be determined and effectuated when possible. *See Chapin and Wife v. School District*, 35 N.H. 445, 451 (1857) (parties' intention is controlling); *cf. Div. of Labor Stand. Enf. v. Dick Bullis, Inc.*, 140 Cal. Rptr. 267, 270 (App. Dep't Super. Ct. 1977) (court will uphold forfeiture where intent clear and terms of contract unambiguous). When it is a condition subsequent that must be construed, however, the rule of strict construction operates to confine the determination of intent to the face of the deed and resolve all ambiguities against forfeiture. *See Hoyt v. Kimball*, 49 N.H. 322, 325 (1870). We therefore hold that the trial court did not err in construing the club's obligation as limited to maintaining and making the hill available as a ski area. It was not required to import meanings not apparent on the face of the deed, *see Gage*, 64 N.H. at 234, 9 A. at 188, such as obligations to provide a rope tow or ski instruction.

■ ▪ The defendants next argue that the trial court erred in resolving ambiguities in the deed against the grantor. The trial court held that "[u]ncertainty or ambiguity in deeds must be resolved in favor of the grantee and against the grantor." This rule of construction applies only as a last resort. *See Smith v. Furbish*, 68 N.H. 123, 127-29, 44 A. 398, 400 (1897); *cf. Centronics Data Computer Corp. v. Salzman*, 129 N.H. 692, 696, 531 A.2d 348, 350

(1987) (rule applied when all other means of ascertaining parties' intent have failed). Thus, to the extent the court below misunderstood the appropriate application of this rule of construction, it erred. The trial court, however, apparently did not rely on this rule in its decision, as the defendants concede in their brief. Even if the trial court did apply this rule, the result would have been the same as applying the rule of strictly construing conditions subsequent. We therefore deem any trial court error harmless. *See Place v. Place*, 129 N.H. 252, 260, 525 A.2d 704, 709 (1987).

Third, the defendants contend that the trial court erred in finding that the club did not breach the condition. Insofar as they argue that the court was required to consider extrinsic evidence of the parties' intent, we disagree in light of the principles of deed construction set forth above. We address the defendants' remaining arguments separately.

The trial court correctly found that the club's substantial compliance with the express language in the deed would satisfy the terms of the condition. Substantial compliance will avoid a breach of a condition subsequent. *See Griggs v. Driftwood Landing, Inc.*, 620 So. 2d 582, 587 (Ala. 1993); *New Orleans Great Northern R. Co. v. Hathorn*, 503 So. 2d 1201, 1204 (Miss. 1987). "To constitute a breach of a condition subsequent in a deed relating to maintenance or use of the land conveyed, there must be such neglect to comply as to indicate an intention to disregard the condition." *Townhouser, Inc.*, 534 N.W.2d at 759.

■ "We will not substitute our own judgment for that of the trier of fact if it is supported by the evidence, especially when he has been assisted in reaching his conclusions by a view." *Heston v. Ousler*, 119 N.H. 58, 60, 398 A.2d 536, 537 (1979). Here, evidence showed that Red Hill was cleared in the fall from 1991 to 1993 during club work sessions in preparation for skiing, that people skied on the property for a few days in February 1993, and that current facilities at Red Hill include a rope tow, clubhouse, storage shed, lights, and snow-packing equipment. Although it is true the club failed after 1991 to operate a rope tow with a permit in compliance with statutory requirements, *see* RSA 225-A:14 (1989), that fact is not dispositive of whether it provided ski facilities under the plain terms of the deed. Since we hold that the club was not required under the deed to provide a tow, its failure to obtain a permit to operate one may have violated a statute but did not breach the condition. *Cf. Hathorn*, 503 So. 2d at 1204 (facility's failure to comply with regulatory mandate would not preclude substantial

compliance with condition subsequent). Ample evidence in the record supports the trial court's conclusion that the club did not abandon the property and thus substantially complied with the condition subsequent.

The defendants further contend that according to the deed, the club was obligated to provide skiing facilities "in accordance with its now existing by-laws," and that the trial court should have considered a separate document entitled "Red Hill Outing Club Rules & Regulations" as part of the by-laws. We agree with the trial court that even if this document were considered part of the by-laws, its references to ski lessons and a tow did not require the club to provide these amenities. As the trial court observed, the "Rules & Regulations" merely governed the manner in which skiers were to use the ski slope. Rather than imposing duties on the club, the "Rules & Regulations" enumerates guidelines for patrons to promote the safe and orderly use of the premises.

■ The defendants also challenge a number of the court's factual findings. They argue that the court erred in finding that "safe skiing" on the entire property required a minimum base of twelve inches of snow, enabling it to find inadequate snowfall and thus to excuse the club from compliance with the condition subsequent during the relevant period. The record reveals that there was conflicting testimony on whether twelve inches was the minimum base for the entire ski slope or only for the higher portions of the hill. "Witness credibility is a finding of fact and will not be overturned unless clearly erroneous or unsupported by the evidence." *Fleet Bank - N.H. v. Christy's Table*, 141 N.H. 285, 288-89, 681 A.2d 646, 648 (1996). The club vice-president, secretary, and treasurer all testified that safe skiing on the slope generally required at least a foot of snow. We find that sufficient evidence to support the trial court's finding.

With respect to the defendants' remaining arguments regarding the factual findings below, we have reviewed the record and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

Lastly, the defendants assert that by refusing to consider evidence of a breach that occurred after the suit filed by the club commenced, the trial court wrongfully estopped them from claiming the full period of the club's alleged breach of the condition. We disagree. A grantor may not offer evidence of a breach of condition subsequent when that evidence occurred after the grantor brought action to re-enter and terminate the grantee's estate. *See Tough v.*

*Netsch*, 83 N.H. 374, 381, 142 A. 702, 707 (1928). A grantor who exercises his right to terminate the grantee's estate is deemed to have taken legal possession of the property. *See Barker and Wife v. Cobb*, 36 N.H. 344, 348 (1858). The grantee's obligations under the deed are in effect suspended until the court orders otherwise or makes a final determination that the conditions have not been breached.

Here, the defendants took legal possession of Red Hill upon commencing legal action in October 1994 to re-enter the property, thereby relieving the club of its obligations under the deed. Further, the defendants' claim of breach was based on alleged acts or omissions occurring up to that time. Additional acts or omissions by the club that occurred after October 1994 are irrelevant to the breach already alleged. The defendants' argument therefore must fail.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.