2006 OK CIV APP 120

**Reuel Wesley ATOR, Plaintiff/Appellee,**

v.

**The UNKNOWN HEIRS, PERSONAL REPRESENTATIVES, DEVISEES, TRUSTEES, SUCCESSORS AND ASSIGNS OF Thelma A. ATOR, Deceased; Board of Education of Owasso Independent School District No. 11; City of Owasso, A Municipal Corporation; and State of Oklahoma ex rel., Oklahoma Tax Commission, Defendants/Appellants.**

Nos. 101,716, 101,718.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 15, 2006.

Certiorari Denied Sept. 25, 2006.

Douglas L. Boyd, Tulsa, OK, and Gary A. Eaton, William E. Sparks, Eaton & Sparks, Tulsa, OK, for Plaintiff/Appellee.

Ronald D. Cates, Owasso, OK, for Defendant/Appellant, City of Owasso, Oklahoma.

J. Douglas Mann, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, OK, for Defendant/Appellant, Board of Education of Owasso Independent School District No. 11.

Opinion by BAY MITCHELL, Presiding Judge.

¶1 Defendant/Appellant Board of Education of Owasso Independent School District No. 11 (School District) and Defendant/Appellant City of Owasso (City) appeal the trial court's order granting summary judgment in favor of Plaintiff/Appellee Reuel Wesley Ator (Plaintiff Ator) and quieting title to certain property in Plaintiff Ator's name. After conducting a *de novo* review, we affirm the trial court's ruling.[1]

---

1. The parties submit this appeal without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup. Ct. R. 1.36, 12 O.S.2001, Ch. 15, App. City and School District do not appeal the trial court's

## Factual Background

¶ 2 The material facts are not in dispute. By warranty deed executed June 12, 1950, Thelma Ator acquired title to certain real property in the City of Owasso, including the "Subject Property," which is described as follows:

The South seven (7) Acres of the Southwest Quarter [SW/4] of the Southwest Quarter [SW/4] of the Southeast Quarter [SE/4] of Section Nineteen (19), Township Twenty-one (21) North, Range Fourteen (14) East of the I.B. & M [Indian Base Meridian, Tulsa County, State of Oklahoma].

Thelma Ator died intestate on April 11, 1991, a resident of Colorado, leaving Plaintiff Ator as her sole heir at law.[2] At the time of her death, Thelma Ator owned the Subject Property subject to the rights of School District, described below.

### 1. *Ator Field*

¶ 3 By both written agreement and warranty deed dated November 8, 1954, Thelma Ator, joined by her husband M.D. Ator, made a conditional gift of the Subject Property to School District. The warranty deed contains the following express limitations on the conveyance:

PROVIDED, That this conveyance to [School District] is solely for **the construction and maintenance on said real property of a football playing field and stadium for the use and benefit of the students of said School District, for so long as said real property shall be used for such purposes as a part of a regularly organized and fully scheduled program of football practice and playing** and for so long as [School District] shall fully observe and perform all the covenants, conditions and obligations of that certain agreement between the same parties dated the 8th of November, 1954 . . .; and provided further that if at any time after the date hereof, [School District] shall fail to comply fully with the terms of this deed or said agreement or observe the

denial of their counter-motions for summary judgment.

spirit thereof, this grant shall become null and void and the full fee simple title to said property shall revert to and vest in [Thelma and M.D. Ator], their heirs and assigns forever.

(Emphasis added). Pertinent provisions of the signed agreement accompanying the warranty deed state:

All parties to this agreement are aware of the fact that [**School District**] **has heretofore been unable to institute and conduct** *in its school system* **a fully organized and regularly scheduled program of football training and football games,** and that one of the reasons for the absence of such a program is the fact that [School District] does not own or maintain a football field, stadium or other facility for the use of the students of said school district in the practice and playing of football. The parties are further aware of the fact that [School District's] financial limitations will not permit the early and ready acquisition of such a facility by purchase and construction thereof of necessary facilities, and [Thelma and M.D. Ator] therefore desire, upon certain conditions, to make a gift of the above described property to [School District] **for the purpose of providing a proper playing field and location for the subsequent construction of a complete and adequate field and facility for the playing of football by the students of said School District.**

\* \* \*

2. It is understood and agreed by the parties that said land will be conveyed by [Thelma and M.D. Ator] to [School District] **for the sole and exclusive purpose of constructing and maintaining thereon an athletic field for the practice and playing of the game of football by the students of Owasso Independent School District No. 11, its successors and assigns, and such other groups or teams as may be permitted to use the same by** [School District].

2. Thelma Ator legally adopted Plaintiff Ator on May 12, 1978, in the District Court of Washington County, State of Oklahoma.

* * *

7. It is expressly agreed and understood that the conveyance of said property to [School District] by [Thelma and M.D. Ator] is for **the sole and express purposes of permitting** *[School District] to conduct and maintain in its School District a regular and organized program of football practice and playing.* **It is the intention of the parties by this agreement and the conveyance to be made pursuant hereto to provide for the students of said School District an adequate facility for the playing of organized games of football with students of other schools and school districts, on a regularly scheduled basis and in the manner and form generally employed by high schools in comparable communities over the state.** It is the express agreement of the parties that the grant of said real estate shall be effective *so long as [School District] maintains in its school district and upon said property a fully organized football program, and so long as said property is used for the playing of a complete program of regularly scheduled football games and contests during each school year,* and so long as all other covenants and conditions of this agreement imposed upon [School District] are kept and observed by it. It is further agreed by the parties that **if at any time in the future** *[School District] should cease to maintain a regularly organized football program upon said property comparable in quality and standards to similar programs maintained in other communities of like size,* or should fail to observe any other covenant of this agreement, that said grant shall terminate, all rights of [School District] hereunder and under said deed shall come to an end, and the title of said property shall revert to [Thelma and M.D. Ator], their heirs, successors and assigns. [School District] hereby expressly agrees that should it at any time in the future cease to maintain such a program, it will reconvey said property to [Thelma and M.D. Ator], their heirs, successors and assigns by good and sufficient warranty deed.

8. It is agreed by the parties that should the title to said property at any time in the future revert to [Thelma and M.D. Ator], their heirs, successors and assigns, by operation of law or otherwise, [School District] shall leave in place any fence or fences constructed by it upon said property, which said fence or fences shall become the property of [Thelma and M.D. Ator], their heirs, successors or assigns. [School District] shall have a period of ninety (90) days from the reversion of such title in which to remove any other improvements placed upon said property by it which may be removed without permanent damage to the land. In such event, [School District] agrees to restore, so far as possible, said property to its natural condition, save and except for the fence above mentioned.

(Emphasis added).

¶ 4 Following this conveyance, School District constructed a stadium and practice field on the Subject Property in 1954, which became known as Ator Field. For forty years, School District used the Subject Property for all Owasso high school football games and practices. In 1994, School District constructed a new football stadium, known as Owasso Stadium, on the grounds of the new high school. The last School District high school varsity football game played on the Subject Property was in September, 1994. The last School District high school junior varsity and freshman football games played on the Subject Property were in October, 2000. The last School District junior high and eighth-grade varsity football games played on the Subject Property were in September, 2001. The Superintendent of the Owasso Public Schools testified at deposition that School District does not have any plans to ever use the Subject Property again for its high school football stadium.

¶ 5 Since 2001, School District's primary use of the Subject Property has been as a practice and scrimmage facility for its eighth- and ninth-grade football teams. Those teams play all of their home games at Owasso Stadium, however.

¶ 6 School District also has permitted a private organization known as the Future Owasso Rams (FOR) to use the Subject

Property for both football practice and home games. In existence since at least 1969, FOR is a private, parent-sponsored, youth sports organization for children in grades three through seven who live within the Owasso School District.[3] Its mission is to provide athletic training and recreation to the children of Owasso in order to prepare them for participation in School District's junior high and high school sports programs. As a member of the Indian Nations Football Conference (INFC), FOR maintains an eleven-player tackle football program. During the 2003 season, FOR had a total of sixteen teams playing tackle football in regularly scheduled INFC games. All FOR home football games take place on the Subject Property.

¶ 7 Although no written agreement exists between School District and FOR, School District assists FOR by providing safe and appropriate locations for practices and games, when available, and by distributing recruiting notices about FOR programs in grades three through seven. School District also donates used sports equipment to FOR, and its varsity football coaches provide an annual clinic for the benefit of FOR players and coaches. School District otherwise provides no financial benefits or support to FOR and does not control, direct, or manage FOR in any way. For its part, FOR assists School District with repairs and maintenance of the Subject Property and carries its own liability insurance.

2. *The Roadways*

¶ 8 By Deed of Dedication dated December 21, 1999, School District purported to grant City the following portion of the Subject Property (the "Roadways"):

North 13.5 feet of the South 30 feet of the West 307.26 feet, and the North 23.50 feet of the South 40 feet of the East 12 feet of the West 319.26 feet; and the North 33.50 feet of the South 50 feet of the East 290.25 feet of the West 609.51 feet; and the East 50 feet of the Southwest Quarter (SW/4) of the Southwest Quarter (SW/4) of the Southeast Quarter (SE/4) Section 19,

Township 21 North, Range 14 East of the IB & M.

City acquired the Roadways in order to reconstruct the intersection of 86th and Main in Owasso by widening the streets and improving signalization. City undertook the now-completed project in the latter half of 2002 at a cost of $1,452,625 in federal and City funds.

*Procedural History*

¶ 9 On October 8, 2003, Plaintiff Ator filed a petition seeking a decree determining himself to be the sole heir of Thelma Ator, as well as the successor to her interest in the Subject Property. Plaintiff Ator alleged that any right, title, or interest School District claimed in the Subject Property had terminated under the terms of the 1954 Agreement and Warranty Deed, and that the trial court should quiet title to the Subject Property in Plaintiff Ator's name. He further declared that City had acquired no right, title, or interest in the Subject Property by virtue of School District's Deed of Dedication because School District owned no interest in the Subject Property at the time of the purported Roadways conveyance.

¶ 10 After reviewing the parties' motions and counter-motions for summary judgment, the trial court entered an order entitled "Journal Entry of Judgment Quieting Title Only," which granted Plaintiff Ator's motion for summary judgment, denied the counter motions of School District and City, and decreed Plaintiff Ator the sole heir of Thelma Ator and the successor to her right of ownership in the Subject Property. The trial court held FOR's use of the Subject Property for the practice and playing of grade-school-level football games does not satisfy the contractual obligations to which School District agreed in the 1954 Agreement and Warranty Deed. The trial court concluded "ownership of and title to the Subject Property reverted to Plaintiff Ator in September 2001, at the latest, when the last football game was played thereon by any of the School District's football teams" and that Plaintiff Ator is entitled to judgment quieting title in the Subject

---

**3.** To be eligible to participate in FOR youth sports, children must live within the Owasso

School District but do not have to attend school within the district.

Property in his name against both School District and City as a result. The trial court further held that although Plaintiff Ator cannot eject City from the Roadways, he would be entitled, in a separate action, to seek recovery from City for the fair market value of the Roadways at the time of the municipal taking.

¶ 11 The trial court subsequently entered a separate Order in which it held that the provisions in Paragraph 8 of the 1954 Agreement relating to School District's obligations, upon the reversion of title to the Subject Property, "to remove any other improvements placed upon said property ... without permanent damage to the land" and "to restore, so far as possible, said property to its natural conditions" are enforceable because they do not violate and are not prohibited by Oklahoma Constitution, Article 10, Section 26. The trial court subsequently denied Plaintiff Ator's motion for specific enforcement of School District's contractual obligations under Paragraph 8, holding Plaintiff Ator entitled to recover monetary damages in lieu of specific performance, but reserving determination of the amount of monetary damages until after School District's appeal of the underlying quiet title judgment.[4]

### Standard of Review

¶ 12 "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Carris v. John R. Thomas & Assoc.,* 1995 OK 33, ¶ 16, 896 P.2d 522, 530; 12 O.S. Ch.2 App., Dist. Ct.R. 13(d). Summary judgment disposes solely of issues of law, which we review *de novo. See Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455. Our *de novo* review is plenary, independent, and non-deferential. *See Gladstone v. Bartlesville Indep. Sch. Dist. No. 30,* 2003 OK 30, ¶ 5, 66 P.3d 442, 445. Here, the essential facts are not in dispute, and the issue for our determi-

nation is the interpretation of a warranty deed. This is an issue of law.

### Discussion

¶ 13 It is undisputed that by operation of the 1954 Warranty Deed, Thelma Ator conveyed to School District a determinable fee simple in the Subject Land and retained a transferable possibility of reverter. *See Bonebrake v. McNeill,* 1971 OK 146, ¶ 9, 491 P.2d 269, 271; *and Frensley v. White,* 1953 OK 79, ¶ 5, 254 P.2d 982, 984; *see also* 60 O.S.2001 §§ 29, 30, and 40. A determinable fee simple, also known as a determinable fee upon conditional limitation, "is a fee simple except that it is immediately terminated by the happening of some possible event, subsequently. The estate remaining in the grantor after the conveyance of such an estate is a possibility of reverter which he may convey, it being considered an interest in the land." *Frensley v. White,* ¶ 5, 254 P.2d at 984. In contrast, a fee simple subject to condition subsequent "may be terminated by the grantor by re-entry upon the happening of some possible event, subsequently. What remains to the grantor after the conveyance of such an estate is a power [of re-entry] ... which is not an interest in the land and is not sufficiently in esse to be subject of conveyance."[5] *Id.* Breach of a conditional limitation triggers automatic reversion of land, whereas breach of a condition subsequent results in forfeiture. *See Ludwig v. William K. Warren Found.,* 1990 OK 96, ¶¶ 9, 12, 809 P.2d 660, 662–63.

¶ 14 The question before us is one of contract interpretation—whether a condition has occurred within the meaning of the 1954 Agreement and Warranty Deed triggering automatic reversion of the Subject Property to Plaintiff Ator.

¶ 15 School District argues the "spirit" of the Agreement was to benefit children by promoting football and providing School District with land on which students could practice and play the game. School District in-

---

4. The trial court certified as final and appealable under 12 O.S.2001 § 994, its order that ownership of the property reverted to Ator and quieting title in his name.

5. Under 60 O.S.2001 §§ 29, 30, and 40, however, it appears all remainders, including possibilities of reverter, are now alienable as interests in real property.

sists these objectives currently are being met by its use of the Subject Property for eighth and ninth-grade football practices as well as for FOR practices and games. School District points out that none of these goals would be advanced if Plaintiff Ator assumed control of the Subject Property, demolished the stadium, and prevented children from playing football there. School District notes the 1954 Agreement contains five express references to "the students" of School District, but no references to the high school, its varsity football team, or to the age or grade level of football players. School District maintains FOR football games are played "in the manner and form generally employed by high schools" as required by the Agreement.

¶ 16 Plaintiff Ator counters there is no evidence Thelma Ator intended to donate the land for the promotion of football in general. Rather, the express language of the conveyance indicates she hoped to correct *School District's* inability to "institute and conduct *in its school system* a fully organized and regularly scheduled program of football training and football games" by giving it property on which to "own or maintain a football field, stadium or other facility for the use of the students of said school district in the practice and playing of football." He stresses it was School District's choice to build a new stadium on separate property rather than renovate and expand the facilities on the Subject Property in keeping with its contractual obligations under the 1954 Agreement and Warranty Deed. Plaintiff Ator argues School District cannot rely on FOR's use of the Subject Property to bootstrap itself into alleged compliance with the terms of the conditional grant.

¶ 17 We agree with Plaintiff Ator. The plain language of the 1954 Agreement and Warranty Deed indicates that Thelma Ator intended for *School District,* not any other entity, to (1) maintain *"upon said property* a fully organized football program;" (2) use the Subject Property "for the playing of a complete program of regularly scheduled football games and contests during each school year," and (3) "maintain a regularly organized football program *upon said property* comparable in quality and standards to similar programs maintained in other communities of like size." It is undisputed none of School District's football teams have played any football games at Ator Field since 2001. The plain fact is School District no longer maintains upon the Subject Property a fully organized football program of regularly scheduled football games as required by the 1954 Agreement and Warranty Deed. We agree with the trial court that School District cannot rely on FOR as its surrogate to avoid reversion of the Subject Property to Plaintiff Ator.

■ ¶ 18 School District cites case law from New Hampshire and Missouri in support of the proposition that conditional limitations are satisfied by substantial compliance and must be strictly construed. School District has failed to cite, and we have been unable to locate, any Oklahoma statutes or decisions that would cause us to believe such is also the law in this State. Even if it were, the cases School District cites are distinguishable on various grounds. For example, *Red Hill Outing Club v. Hammond,* 143 N.H. 284, 722 A.2d 501 (1998), involved a fee simple subject to condition subsequent with a right of re-entry, as opposed to a determinable fee simple with the possibility of reverter such as the one at issue in the case before us on appeal. The New Hampshire Supreme Court reasoned it must strictly construe the deed so that any ambiguities would be resolved against forfeiture. *Id.,* at 505. Because violation of conditional limitations—as opposed to conditions subsequent—result in reversion of land rather than forfeiture, the same concerns do not apply to the case before us on appeal.

¶ 19 Each of the other two cases School District cites, *Harris v. Consol. Sch. Dist. No. 8C, Dunklin County,* 328 S.W.2d 646, 651 (Mo.1959) and *Board v. Nevada Sch. Dist.,* 363 Mo. 328, 251 S.W.2d 20, 26 (1952) involved land conveyed by determinable fee for use as school sites. In neither case did the Missouri Supreme Court expressly hold that substantial compliance is sufficient to satisfy conditional limitations in determinable fees. The Missouri Supreme Court did conclude, in both instances, that no reverter had been shown, reasoning the periods of non-use were insufficient to establish permanent ces-

sation, and citing the lack of evidence of intended abandonment, let alone actual relinquishment, of the properties for school sites. The Agreement and Warranty Deed at issue in the case before us on appeal do not contain abandonment or relinquishment requirements, and we decline to read such conditions into the articles of conveyance. Furthermore, at the time Plaintiff Ator filed his petition, School District had ceased to maintain any sort of fully-organized program of regularly scheduled football games on the Subject Property for at least two years, and had ceased holding its varsity practices and home games on the land for a period of more than nine years. In addition, the Superintendent of Owasso Public Schools testified there are no plans to ever use the Subject Property as its high-school football stadium again.

¶ 20 School District next argues the trial court erred in concluding that Plaintiff Ator's request for specific enforcement of its contractual obligations "to remove any other improvements placed upon said property . . . without permanent damage to the land" and "to restore, so far as possible, said property to its natural conditions" is not barred by Oklahoma Constitution Article 10, Section 26, which prohibits governmental entities from entering into contracts that would require the expenditure of funds from a future fiscal year. This argument was rendered moot by the trial court's denial of Plaintiff Ator's motion for specific enforcement of School District's contractual obligations. The trial court instead ruled that Plaintiff Ator is entitled to monetary damages in an amount to be determined later. In any event, School District acknowledges 62 O.S.2001 § 365.5 provides a statutory mechanism for satisfying judgments against school districts.

¶ 21 As a final matter, City claims the trial court erred in concluding its laches defense unavailing. Laches is an equitable remedy that requires a showing of unreasonable delay in filing suit, along with knowledge of the relevant facts, resulting in prejudice to the defendant. *Russell v. Williams,* 1998 OK CIV APP 135, ¶ 13, 964 P.2d 231, 236. City argues Plaintiff Ator knew of facts leading to termination of School District's deter-

minable fee simple as early as 1996 but did not file suit until October, 2003.

¶ 22 We find City has failed to satisfy the elements of its laches defense. First, Plaintiff Ator's delay in initiating the present action was not unreasonable in light of the applicable statute of limitations for both adverse possession and inverse condemnation proceedings. *See Putnam v. Oklahoma City,* 1956 OK 117, ¶ 14, 296 P.2d 797, 800 (holding Oklahoma City's continued possession of land following its alleged breach of condition triggered fifteen-year adverse-possession statute of limitations); *and Drabek v. City of Norman,* 1996 OK 126, ¶ 10, 946 P.2d 658, 661 (holding the fifteen-year prescriptive period is appropriate where there has been a taking without just compensation); *see also* 12 O.S. 2001 § 93(4) (applying the fifteen year statute of limitations to all real-property actions other than those enumerated in that statute). Second, there is no evidence City suffered any material prejudice or irreparable harm as a result of Plaintiff Ator's alleged delay. Plaintiff Ator may not eject City from the Roadways because City has already devoted the land to public use; his exclusive remedy is inverse condemnation. *See Oklahoma City v. Wells,* 1939 OK 62, ¶ 32, 91 P.2d 1077, 1081.

### Conclusion

¶ 23 For the foregoing reasons, we AFFIRM the trial court's grant of summary judgment to Plaintiff Ator and its order quieting title in the Subject Property in his name and against City and School District.

¶ 24 AFFIRMED.

ADAMS, J., and BUETTNER, C.J., concur.