Hillsborough-northern judicial district
No. 2009-316

ANNA H. CARDONE REVOCABLE TRUST, WESLEY CARDONE, TRUSTEE

v.

LINDA K. CARDONE & a.

Argued: November 17, 2009
Opinion Issued: July 20, 2010

*The Munilaw Group*, of Epsom (*Tony F. Soltani* on the brief and orally), for the petitioner.

*NyquistWeinstein Law Firm*, of Manchester (*Merrick C. Weinstein* on the brief and orally), for respondent Linda K. Cardone.

BRODERICK, C.J. The petitioner, Anna H. Cardone Revocable Trust, Wesley Cardone, Trustee (hereinafter the Trust), appeals from orders of the superior court denying its motions for entry of judgment and partial summary judgment, while granting respondent Linda K. Cardone's motion to strike confession of judgment and her cross-motion for summary judgment. We affirm in part, vacate in part, reverse in part, and remand.

## I

The following facts were either found by the trial court or are undisputed. The Trust was established by Cardone's mother, Anna, who is now deceased. In June 1998, Cardone used funds that the Trust made available to purchase a condominium in Manchester from Robert and Jeanne Sullivan. The conveyance was completed with a condominium warranty deed to Cardone, which included the following clause:

This conveyance to the said Linda K. Cardone (Grantee) is conditional and she may hold the within premises for so long as she does not in any way pledge, alienate, or in any way hypothecate any interest in the within conveyed premises to any person or entity, nor make any attempt to do so, nor permit any person or entity to exercise a lien or attachment against the within described [premises] until June 12, 2008. Should this condition and covenant be in any way violated or any attempt be made by the said grantee to violate the within condition, the title in the within [premises] shall without further act or action, revert to the Anna H. Cardone Revocable living trust. The Trustee of the said Trust, may in his/her sole discretion modify, release or discharge the within condition in writing, under seal to be recorded.

The deed was signed by the Sullivans, by Anna Cardone as "execut[ing] the within deed for the purposes therein contained," and by Linda Cardone as "accept[ing] the provisions . . . of this deed."

The following June, Cardone executed a mortgage on the condominium in favor of John R. Cook, in the amount of $11,400, as security for a debt that she owed him. At various times, the City of Manchester imposed liens on the condominium for unpaid property taxes.

In the summer of 2006, Cardone was medically incapacitated and hospitalized; in July, the Hillsborough County Probate Court appointed her sister, Kathleen Holmes, as guardian over her person and estate.

In August, the Trust filed a petition to quiet title against Cardone and Cook, alleging that Cardone was "in breach of the covenant, condition and reverter contained in the conveyance instrument." The petition sought to divest Cardone of her ownership and interest in the condominium, and also sought a declaration that any purported security interest, mortgage, or encumbrance claimed by Cook in the condominium was "null and void." Counsel retained by Holmes subsequently filed a confession of judgment for Cardone, thereby waiving her right to file an answer and defenses to the Trust's petition. In January 2007, the Trust moved for entry of judgment.

In February, new counsel for Cardone, whose guardianship of her person had been terminated by the probate court two months earlier, moved to strike the earlier confession of judgment and objected to the Trust's motion for entry of judgment. The trial court denied the Trust's motion and granted Cardone's motion to strike. The Trust then filed a motion to enter judgment *pro confesso*, and a motion for reconsideration of the trial court's earlier orders. Cardone objected and filed an answer to the Trust's original petition to quiet title. The trial court subsequently denied the Trust's motions.

In June, the Trust unsuccessfully moved for partial summary judgment. In denying the motion, the Superior Court (*McGuire*, J.) noted that genuine issues of material fact existed regarding both the intent of the parties in creating a condition subsequent, and whether it was breached. The Trust sought and received a conditional default and a final default judgment against Cook, leaving Cardone as the sole active respondent in this case.

In August 2008, the Trust renewed its motion for partial summary judgment. Cardone objected, and the Superior Court (*Smukler*, J.) denied the motion in February 2009. In March 2009, Cardone moved for entry of judgment. The Superior Court (*Smukler*, J.) treated her motion as a cross-motion for summary judgment and granted it. This appeal followed.

The Trust contends that the trial court erred: (1) in denying its January 2007 motion for entry of judgment and granting Cardone's February 2007 motion to strike confession of judgment; and (2) in denying its August 2008 motion for partial summary judgment and granting Cardone's March 2009 cross-motion for summary judgment. We address each argument in turn.

## II

The Trust first contends that the trial court erred in denying its motion for entry of judgment and in granting Cardone's motion to strike confession of judgment. We disagree.

A trial court has discretion in deciding whether to strike a confession of judgment, and we will not disturb its ruling unless the court erred as a matter of law or engaged in an unsustainable exercise of discretion. *See Hanover Inv. Corp. v. Town of Hanover*, 142 N.H. 812, 813 (1998); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

The Trust argues that Cardone's filings, or lack thereof, which culminated in her motion to strike confession of judgment, violated Superior Court Rules 56 (withdrawal of records from court files), 131 (bill taken *pro confesso* if defendant neglects to enter appearance on the return day, or neglects to file plea, answer, or demurrer within the time proscribed), and 133 (requirements concerning the answer to a bill and defenses asserted). Cardone contends that none of those rules applies to this case. Assuming, without deciding, that these rules do apply, we cannot say that the trial court erred as a matter of law or unsustainably exercised its discretion in striking the confession of judgment. In denying the Trust's subsequent motions for entry of judgment *pro confesso* and for reconsideration, the trial court found that Cardone "ha[d] demonstrated good cause and that justice require[d] that the confession of judgment be set aside."

■ The Preface to the Superior Court Rules states: "As good cause appears and as justice may require, the court may waive the application of any rule." The trial court has broad discretion in determining whether to waive its rules, and we will not reverse its decision absent an unsustainable exercise of discretion. *Donnelly v. Eastman*, 149 N.H. 631, 633 (2003). In contexts other than those involving statutes of limitations, we have emphasized justice over procedural technicalities. *Id.*

Here, the record is clear that when the Trust filed its petition to quiet title against Cardone in August 2006, she was medically incapacitated, hospitalized, and subject to a full guardianship over her person and estate. The guardianship over her person remained in effect until December 12 of that year. In response to the petition, counsel retained by Cardone's guardian filed a confession of judgment indicating that the guardian had reviewed the Trust's petition, and that the filing attorney represented the guardian, not Cardone. In Cardone's motion to strike the confession of judgment, filed after the guardianship over her person was terminated, she objected to the "confession . . . purportedly entered on her behalf," and stated that she did "not believe that her interests ha[d] been protected and desire[d] to fully contest th[e] matter, through her own counsel, absent the prior restraints of the guardianship." In January 2007, the Trust moved for entry of judgment based upon the confession of judgment. In her objection, Cardone stated, in part:

> [My] interests were not fully and adequately represented by counsel whom [my] guardian retained inasmuch as that counsel did not take steps to oppose the Petition to Quiet Title in any way.
>
> . . . [I] was medically incapacitated until at least October of 2006 and therefore could not be consulted regarding [my] position on the Petition to Quiet Title against [me].
>
> . . . The Guardian . . . had a conflict of interest inasmuch as she is a beneficiary under the . . . Trust and, as such, stands to profit in the event that ownership of the real property reverts to the trust.
>
> . . . .
>
> . . . [My] interests were never adequately represented here and, therefore, the court should not enter final judgment against [me] but should maintain this matter on the active docket for adjudication at the appropriate time.

The trial court denied the Trust's motion for entry of judgment and granted Cardone's motion to strike. The Trust then filed a motion to enter

judgment *pro confesso*, and a motion for reconsideration of the trial court's earlier orders. Cardone objected and filed an answer to the Trust's original petition to quiet title.

In its order denying the Trust's motions to enter judgment *pro confesso* and for reconsideration of its earlier orders, the trial court noted Cardone's incapacitation and the failure of the attorney retained by the guardian to take any steps to oppose the petition to quiet title. In balancing the assumed violations of the superior court rules with the factual circumstances presented to the trial court, we cannot say that it erred as a matter of law or engaged in an unsustainable exercise of discretion.

The Trust further argues that had the trial court used the "seven-prong test" referenced in *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 503 (1st Cir. 1996), to determine whether a default judgment should be lifted, it would have found that Cardone had failed to establish that either good cause or justice required waiving the application of the superior court rules. The "test" in *McKinnon* was a set of "general guidelines that . . . warrant[ed] consideration by a [federal] district court in determining whether a default judgment should be lifted" pursuant to a Federal Rule of Civil Procedure. *McKinnon*, 83 F.3d at 503. We note that the First Circuit acknowledged that good cause is a "mutable standard, varying from situation to situation," and that "[n]o precise formula is suggested, for each case necessarily turns on its own unique facts." *Id.* To the extent that the Trust argues that we should apply the seven-prong test here, we decline to do so. The First Circuit's interpretation of a Federal Rule of Civil Procedure concerning a default judgment is simply not applicable in this case. *Cf. Zola v. Kelley*, 149 N.H. 648, 653 (2003) (interpretation of Federal Rule of Evidence in United States Supreme Court opinion not binding on our interpretation of New Hampshire Rule of Evidence).

Finally, the Trust, citing no authority, argues that its rights to "appropriate legal and meaningful remedies . . . includ[ing] appellate rights" under the State and Federal Constitutions have been abridged. Judicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing reference to constitutional claims nor casual invocations of constitutional rights without support by legal argument or authority warrants extended consideration. We therefore decline to address this argument further. *See Radziewicz v. Town of Hudson*, 159 N.H. 313, 318 (2009).

We affirm the trial court orders denying the Trust's motion for entry of judgment and granting Cardone's motion to strike confession of judgment.

## III

■■ The Trust next contends that the trial court erred in denying its August 2008 renewed motion for partial summary judgment and in granting Cardone's March 2009 cross-motion for summary judgment.

> We review the trial court's grant of summary judgment by considering the affidavits and other evidence, and the inferences properly drawn from them, in the light most favorable to the non-moving party. If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. We review the trial court's application of law to the facts *de novo*.

*Beckles v. Madden*, 160 N.H. 118, 122-23 (2010) (citations and quotation omitted). Our decision in this case turns on our interpretation of the language in the condominium warranty deed, which we review *de novo*. *See Duxbury-Fox v. Shakhnovich*, 159 N.H. 275, 279 (2009) (interpretation of deeds in a quiet title dispute ultimately to be resolved by this court); *LeBaron v. Wight*, 156 N.H. 583, 585 (2007) (proper interpretation of a contract, such as a deed, is a question of law for this court). Our determination of disputed deeds is based upon the parties' intentions, as best deciphered by construing the deed's language from the position of the parties at the time of the conveyance and in light of surrounding circumstances. *See Duxbury-Fox*, 159 N.H. at 279. Formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute. *Red Hill Outing Club v. Hammond*, 143 N.H. 284, 286 (1998).

■■ We first turn to the Trust's contention that the trial court erred in denying its August 2008 renewed motion for partial summary judgment. In its order, the trial court stated, in part:

> The provision of the deed at issue in this case states that, if . . . Cardone breaches certain restrictions, then the property shall without further act or action, revert to the . . . [T]rust. As stated in [Cardone's] objection, conditions subsequent are strictly construed and, where ambiguous, are construed against forfeiture. This condition subsequent claims that, upon the happening of a particular event, the property will revert to the Trust.

(Quotation, citation, and emphasis omitted.) Both the trial court and Cardone rely upon *Red Hill Outing Club v. Hammond* for the proposition

that "conditions subsequent are strictly construed and, where ambiguous, are construed against forfeiture." We agree, and reiterate what we stated in *Red Hill Outing Club*:

> The construction of deeds is an issue of law for this court. The general rule in interpreting a deed is to determine the parties' intent at the time of conveyance in light of the surrounding circumstances. . . .

> We are not convinced, however, that we should apply the general rule of construction to conditions subsequent. The grantor of a fee simple subject to condition subsequent shall have his exact legal right, but no more. To defeat an estate of his own creation, he must bring the grantee clearly within its letter. A fee simple subject to condition subsequent is a conveyance of land in which the grantor expressly retains the right of re-entry upon breach of a stated condition, the exercise of which results in a forfeiture of estate for the grantee. Because of the drastic consequence of a breach, we have traditionally viewed conditions subsequent with disfavor.

> The passage of time has failed to increase the social value of conditions subsequent. Unlike restrictive covenants, conditions subsequent continue to be viewed with disfavor because of their potential to cause a forfeiture of land. We disagree with the defendants that the consequences of a forfeiture are no greater than those of specific performance of a contract or an attachment on property. A forfeiture by nature is a drastic remedy because in most cases it is widely disproportionate to the breach. In addition, restricted use of the land for a potentially indefinite duration substantially diminishes the land's marketability and development, ultimately to the detriment of the community. Neither specific performance, an equitable remedy at the court's discretion, nor attachment, applied to secure payment of judgment should a plaintiff prevail, evokes the hardships associated with a condition subsequent.

> . . . .

> The overwhelming majority of courts in other jurisdictions also have continued to strictly construe conditions subsequent in deeds with regard to their capacity to work a forfeiture. Our position conforms to the great weight of authority from our sister States.

Our decision today does not abrogate the guiding rule that the intent of the parties to a deed is to be determined and effectuated when possible. When it is a condition subsequent that must be construed, however, the rule of strict construction operates to confine the determination of intent to the face of the deed and resolve all ambiguities against forfeiture.

*Id.* at 286-88 (citations, quotations, and brackets omitted).

In the condominium warranty deed, the condition subsequent reads:

This conveyance to the said Linda K. Cardone (Grantee) is conditional and she may hold the within premises for so long as she does not in any way pledge, alienate, or in any way hypothecate any interest in the within conveyed premises to any person or entity, nor make any attempt to do so, nor permit any person or entity to exercise a lien or attachment against the within described [premises] until June 12, 2008.

The deed also delineates the consequence if the condition subsequent were to be breached:

Should this condition and covenant be in any way violated or any attempt be made by the said grantee to violate the within condition, the title in the within [premises] shall without further act or action, revert to the Anna H. Cardone Revocable living trust.

The target of our strict construction of a condition subsequent is the condition or triggering event, and not the consequence of the same. *See* 1 R. POWELL, POWELL ON REAL PROPERTY § 13.05[2], at 13-50 (Michael Allan Wolf ed., 2010) (courts narrowly interpret the language and surrounding facts to see if the triggering event has occurred); *Red Hill Outing Club*, 143 N.H. at 288 (affirming trial court's strict construction of condition subsequent's triggering event, and not consequences of alleged breach); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 473 (unabridged ed. 2002) (defining "condition subsequent" as "a condition whose fulfillment invalidates or modifies an estate, right, or contract previously vested or in effect"); BLACK'S LAW DICTIONARY 334 (9th ed. 2009) (defining "condition subsequent" as "A condition that, if it occurs, will bring something else to an end; an event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen.").

Here, the trial court strictly construed the delineated consequence, and found that the use of the term "revert" resulted either in an

impossibility or an ambiguity. It erred in so doing. Instead, the trial court's strict construction analysis should have focused upon and made findings as to whether Cardone had breached the condition subsequent — specifically, did she "in any way pledge, alienate, or in any way hypothecate any interest in the within conveyed premises to any person or entity, [or] make any attempt to do so, [or] permit any person or entity to exercise a lien or attachment against the within described [premises before] June 12, 2008." In its earlier denial of the Trust's initial motion for partial summary judgment, the trial court found that genuine issues of material fact existed on the question of breach. In her brief, Cardone argues that none of her actions with regard to the condominium breached the terms of the deed.

■ For the purpose of this analysis only, we assume, without deciding, that Cardone's actions did constitute a breach of the condition subsequent. As such, we turn to an analysis of the consequence delineated in the condominium warranty deed — that "the title in the within [premises] shall without further act or action, revert to the Anna H. Cardone Revocable living trust." In doing so, we are not constrained by strict construction. Instead, we look to the general rule and construe the deed based on the parties' intentions gleaned from construing the language of the deed from as nearly as possible the position of the parties at the time of the conveyance and in light of surrounding circumstances. *Duxbury-Fox*, 159 N.H. at 279. We remain mindful that formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute. *Red Hill Outing Club*, 143 N.H. at 286.

Cardone argues that use of the term "revert" in the deed, and the consequent "apparent intent . . . to return the property to the trust," created "a stark ambiguity" because the Trust had never previously owned or possessed the condominium. The trial court denied the Trust's renewed motion for partial summary judgment because it found that use of the term "revert" resulted either in an impossibility or an ambiguity, stating:

> The [Trust] asserts that it would boggle the legal minds across the country as to how to make the language of any transfer instrument any more clear than the one that is present here. If the Trust is correct — the instrument is not ambiguous — it nevertheless is not entitled to judgment as a matter of law. By definition, it would be impossible for the property to revert to the Trust because the Trust never owned the property. If, however, the deed is ambiguous, the ultimate result remains the same. Because the court construes an ambiguous condition subsequent

against forfeiture, the court will not interpret the reverter provision as some other permissible transfer.

(Quotation and citations omitted.) We disagree that use of the term "revert" here causes either an impossibility or ambiguity.

If we were to read the term "revert" in isolation and in an overly technical sense, we agree that the title to the condominium could not "revert" to the Trust, as the Trust had not previously owned the property. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1943 (definition of "revert" includes "to return to the proprietor or his heirs or assigns after the termination of a particular estate or reversion granted by him"); BLACK'S LAW DICTIONARY, *supra* at 1284 (definition of "possibility of reverter" includes "a future interest retained by a grantor after conveying a fee simple determinable, so that the grantee's estate terminates automatically and reverts to the grantor if the terminating event ever occurs"). Given such a reading, the term "revert" might either lead to confusion or refer to a legal impossibility in this case.

As previously detailed, however, we are not guided by such an overly technical reading when construing the consequence delineated in the condominium warranty deed. Here, the language of the clause ("Should this condition . . . be in any way violated . . . the title in the within [premises] shall without further act or action, revert to the Anna H. Cardone Revocable living trust") makes clear that the intent of the parties was for title to the condominium to transfer to the Trust if the condition were breached. Having specifically named the Trust, nothing in the language of the clause indicates any intent for the title to transfer to either the Sullivans or their estate. As such, use of the term "revert" was an unfortunate, but by no means a fatal, choice of words. *See, e.g., Hiller v. Loring*, 136 A. 350, 351 (Me. 1927) (in the interpretation of a will, where language used is inapt, crude, imperfect, or of doubtful meaning, the language is subordinated to the intention of the testator, and the term " 'revert' may be construed as 'go to' or 'pass to,' regardless of the fact that the taker has no prior interest in the property").

■■ ■ Nor does any such confusion, or legal impossibility, create ambiguity in the clause itself. *See Lassonde v. Stanton*, 157 N.H. 582, 594 (2008) (lack of precision in contract clause does not create ambiguity). Instead, "[a]mbiguity exists only when the parties could reasonably disagree as to a clause's meaning." *Id.* Indeed, even if we were to decide that the term "revert" rendered the clause in the deed ambiguous, the surrounding circumstances all point to the Trust as the intended recipient of the title to the condominium if the condition is breached.

Where the agreement's language is ambiguous, it must be determined what the parties, under an objective standard, mutually understood the ambiguous language to mean. In applying the objective standard, a court should examine the contract as a whole, the circumstances surrounding execution and the object intended by the agreement, while keeping in mind the goal of giving effect to the intention of the parties.

*Found. for Seacoast Health v. HCA Health Servs. of N.H.*, 157 N.H. 487, 501 (2008) (citation and quotation omitted).

Here, the record is clear that the Trust provided Cardone with the funds to purchase the condominium from the Sullivans. The condominium warranty deed was signed by Cardone's mother (the trustor), the Sullivans, and Cardone. Cardone read and agreed to the language of the deed. In her deposition, Cardone stated that she understood that the condominium would return to the Trust if she violated any of the conditions in the deed. Kevin Sullivan, co-executor of his parents' estates, filed an affidavit stating:

To the best of my knowledge and belief, it was [the Sullivans'] understanding that this paragraph meant exactly what it said in that the condominium unit title would transfer to the trust automatically if the conditions or the restrictions described in the deed were violated.

Indeed, Cardone acknowledges in her brief that "[t]he apparent intent of the deed [was] to return the property to the trust." We do not believe that the language of the clause can be reasonably read to mean anything but that title to the condominium should transfer to the Trust if the condition were to be breached. Consequently, we vacate the trial court's denial of the Trust's renewed motion for summary judgment and remand for further proceedings in accordance with this opinion.

Finally, we turn to the Trust's contention that the trial court erred in granting Cardone's March 2009 cross-motion for summary judgment. In granting the cross-motion, the trial court stated: "Cardone has established that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law." We disagree.

Here, the trial court first reiterated the earlier analysis concerning impossibility or ambiguity that it had employed in denying the Trust's renewed motion for summary judgment. For the reasons explained above, we disagree with that analysis. The trial court then stated:

[T]he deed language [of "revert"] could be characterized as creating either a reversionary interest or an executory interest.

. . . .

    . . . Because forfeiture is a "drastic remedy" in either scenario, the court will interpret a fee simple determinable subject to an executory interest no differently than a fee simple subject to condition subsequent. Thus, because the language purporting to create a fee simple determinable subject to executory interest in this case is ambiguous, the court will interpret it against forfeiture.

We need not decide whether the terminology used in the deed is more appropriately deemed a fee simple determinable subject to an executory interest or a fee simple subject to condition subsequent. In either case, our analysis of the term "revert" is the same. Specifically, the language of the clause makes clear that the parties' intent was for title to the condominium to transfer to the Trust if Cardone violated the terms of the deed. The Trust having been specifically named, nothing in the language of the clause indicates any intent that title transfer to either the Sullivans or their estate. While use of the term "revert" was unfortunate, it was by no means a fatal choice of words. Nor does the term "revert" create ambiguity in the clause itself, as we do not believe that the language of the clause can be reasonably read to mean anything but that title to the condominium should transfer to the Trust if Cardone violates the terms of the deed.

In sum, we affirm the trial court orders denying the Trust's motion for entry of judgment and granting Cardone's motion to strike confession of judgment; we vacate the trial court's order denying the Trust's August 2008 renewed motion for partial summary judgment; we reverse the trial court's order granting Cardone's March 2009 cross-motion for summary judgment; and we remand for further proceedings in accordance with this opinion.

*Affirmed in part; vacated in part; reversed in part; remanded.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.