IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

      v.

JOHN L. MORRIS,

      Defendant.

C.A. No. 1804013791
Kent County

Submitted: January 11, 2019
Decided: January 17, 2019

## ORDER

Defendant's Motion to Suppress.
*Granted in part; Denied in part.*

Sean A. Motoyoshi, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Alexander W. Funk, Esquire of Curley Dodge Funk & Street, LLC, Dover, Delaware; attorney for Defendant.

WITHAM, R.J.

## INTRODUCTION

Before this Court is Defendant John L. Morris' ("Morris") Motion to Suppress. Morris moves to suppress all statements and evidence collected pursuant to a traffic stop conducted by a Milford Police Department officer in Milford, Delaware. After carefully considering the merits of Morris' motion, the State's response in opposition, and oral arguments made at the suppression hearing, the Court finds that reasonable suspicion was present to conduct the traffic stop and subsequently, probable cause was demonstrated that justified a lawful arrest. However, the Court also finds that Miranda warnings were not properly given, and thus, a Constitutional right was violated as a result.

Therefore, for the reasons set forth below, Morris' motion to suppress is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 2:30 p.m. on April 21, 2018, Officer Cory Swan ("Officer Swan"), of the Milford Police Department, was on patrol when he observed a Maroon Buick, with heavily tinted windows, traveling northbound on Highway 113 in Milford, Delaware. After passing the Buick on its left, Officer Swan was unable to see the driver through the rolled up, tinted window, nor could he determine how many occupants were inside the vehicle due to the darkness of the tint. Officer Swan pulled over and conducted a DELJIS search of the Buick to verify whether it had a valid tint waiver. It did not. Officer Swan's DELJIS inquiry also revealed that the Buick was registered as a dark green Buick, rather than maroon. After Officer Swan caught up

2

to the Buick, he activated the emergency equipment on his patrol vehicle, indicating for the Buick to pull over. The Buick complied, and pulled into a parking lot and lowered the driver's side window.[1]

Upon approaching, Officer Swan smelled an "overwhelming" odor of marijuana coming from inside the Buick.[2] During his initial interaction with Morris, the driver and sole occupant of the Buick, Officer Swan asked questions normally associated with police officers conducting a traffic stop. Early into the interaction, Officer Swan observed Morris light a cigarette and repeatedly reach for his front pocket. This prompted Officer Swan to instruct Morris twice to keep his hands visible. Despite the instructions, Morris then reached for the glove compartment, resulting in Officer Swan ordering him out of the Buick. Morris again failed to comply and positioned his body to conceal his hands. Officer Swan again ordered Morris out of the vehicle, and he finally complied, with an assist from Officer Swan and was immediately hand-cuffed and placed under arrest.[3]

After Morris was arrested, he stated that was nervous. When Officer Swan asked why he was nervous, Morris indicated that he had "a little bit of weed"[4] and

---

[1] St. Ex. 3 (video from Officer Swan's body camera recorded the traffic stop).

[2] *Id.* at 18:29:46 (The driver's side window is clearly visible in the video. The window lowered upon Morris' parking the Buick and Officer Swan's approach.). Officer Swan further testified at the hearing that he could smell the marijuana from a considerable distance.

[3] Officer Swan did not Mirandize Morris, nor verbally inform him that he was under arrest.

[4] St. Ex. 3 at 18:31:37.

that it was in the Buick. As Officer Swan searched Morris' person, a pill bottle fell out of his left pant leg and was found to contain a white, powdery substance. After Officer Swan confronted Morris regarding the powder, Morris admitted that he possessed "dope," as well as marijuana.[5] The search of Morris' person continued and yielded other drugs and weapons.[6] During the subsequent search of Morris' Buick, Officer Swan and other Milford Police officers discovered more drugs.[7]

As a result, Morris was charged with multiple drug and weapons charges including:

(a) 2 counts of Drug Dealing in violation of 16 *Del. C. § 4753(1)-(2)*;

(b) 2 counts of Aggravated Possession in violation of 16 *Del. C. § 4752(3)*;

(c) 2 counts of Possession of a Deadly Weapon during the Commission of a Felony in violation of 11 *Del. C. § 1447*;

(d) 2 counts of Carrying a Concealed Deadly Weapon in violation of 11 *Del. C. § 1442*;

(e) 1 count of Possession of Drug Paraphernalia in violation of 16 *Del. C. §*

---

[5] *Id.* at 18:32:39-41.

[6] In sum, Officer Swan and other officers of the Milford Police Department seized the following items found on Morris' person: (1) a clear white bag stamped "Gucci Gang;" (2) a pair of brass knuckles; (3) a switch blade; (4) four bundles of heroin in a bottle stamped "Black Panther;" (5) a large, clear plastic bag that contained marijuana; (6) three cut off straws; (7) the before mentioned pill container containing the white, powdery substance; and (8) an unknown amount of United States currency.

[7] Heroin; Oxycodone; Oxymorphone; and additional marijuana was discovered in the Buick incident to Morris' arrest.

4

4771(a);

(f) 2 counts of Illegal Possession of a Controlled Substance in violation of 16 *Del. C.* § 4763(a); and

(g) 1 count of Operating a Vehicle with Improper Window Tinting in violation of 21 *Del. C.* § 4313.

Morris filed this timely motion to suppress on August 27, 2018, moving to suppress statements made incident to his arrest and evidence seized as a result of his incriminating statements. The State's response in opposition was filed on September 17, 2018. A suppression hearing, including oral arguments, was held on January 11, 2019 and the Court reserved judgment.

## STANDARD OF REVIEW

When presented with a motion to suppress evidence or statements collected in a warrantless search, the State bears the burden of proving, by a preponderance of the evidence, "that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[8] At a suppression hearing, the trial judge sits as the trier of fact, and determines the credibility of witnesses.[9]

## PARTIES CONTENTIONS

Morris' motion moves to suppress all evidence and statements collected by

---

[8] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001).

[9] *State v. Brinkley*, 2013 WL 1225869, at *2 (Del. Super. Feb. 19, 2013) (citing *Turner v. State*, 957 A.2d 565, 570–71 (Del. 2008).

Officer Swan at the traffic stop. First, Morris argues that Officer Swan had no reasonable suspicion to conduct the traffic stop.[10] Second, he contends that Officer Swan lacked probable cause to lawfully arrest him.[11] Finally, Morris asserts that Officer Swan's failure to *Mirandize* him violated his Fifth Amendment rights and can not be "relied upon for purposes of justifying the warrantless search of [ ] Morris' vehicle."[12]

In opposition, the State counters that the lack of a tint waiver and the discrepancy regarding the Buick's color was sufficient to establish reasonable suspicion to conduct the traffic stop.[13] The State then argues that Officer Swan had the required probable cause to lawfully arrest Morris based on the detection of marijuana, coupled with Morris' conduct during the traffic stop.[14] Finally, regarding Morris' *Miranda* claim, the State, at the suppression hearing, conceded that Officer Swan failed to *Mirandize* Morris and thus, violated his Fifth Amendment rights. As a result, the State abandoned its opposition to suppression of Morris' statements made after he was arrested. However, the State maintains that Morris was in custody, for

---

[10] D. Mot. at ¶ 22 citing *Wong Sun v. United States*, 371 U.S. 471 (1963); *McDonald v. State*, 947 A.2d 1073 (Del. 2008) (evidence recovered by law enforcement following illegal search and seizure must be suppressed).

[11] D. Mot. at ¶¶ 23-25.

[12] *Id.* at ¶ 6 n. 5.

[13] St. Reply at ¶ 4.

[14] *Id.* at ¶ 6.

purposes of *Miranda*, only after he was ordered out of the Buick and hand-cuffed by Officer Swan. Officer Swan's initial questions, the State contends, were part of an "investigative detention" and thus, should survive suppression.

## DISCUSSION

The Court first must determine whether Officer Swan had reasonable suspicion to conduct the traffic stop. Morris contends that Officer Swan's traffic stop was unsupported by reasonable suspicion because "[a] review of the [m]obile [v]ideo [r]ecording reflects that [Defendant] had not committed a traffic violation, or any other criminal offense, prior to being seized by [Officer Swan]."[15] However, at the suppression hearing, Morris abandoned that argument after the State introduced evidence documenting the events leading up to and during the traffic stop that clearly demonstrated the Buick's windows were tinted. The State also presented evidence that Morris did not have a tint waiver.

Assuming arguendo, that Morris had not abandoned his argument, the Court would nevertheless find that Officer Swan had reasonable suspicion to conduct the traffic stop.[16]

### A. Officer Swan Had Reasonable Suspicion to Conduct Traffic Stop

Pursuant to 21 *Del. C.* § 2144(a), a police officer may "upon reasonable cause,"

---

[15] D. Mot. at ¶ 21.

[16] For purposes of thoroughness, the Court elects to conduct a full analysis.

stop a vehicle to investigate a possible equipment defect.[17] A police officer may also detain an individual if he or she has reasonable suspicion of criminal activity.[18] Reasonable suspicion exists when a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[19] This "must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[20] Reasonable suspicion is "less demanding [ ] than probable cause and requires a showing considerably less than preponderance of the evidence ...."[21]

---

[17] *State v. Cannon*, 2017 WL 1277677, at *1 (Del. Super. Mar. 30, 2017)..

[18] *Id.* citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (The holding in *Terry* is codified in Delaware law at 11 *Del. C. § 1902(a)*. Pursuant to § 1902(a) a police officer "may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.").

[19] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (quoting *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989)).

[20] *Id. See also United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *Quarles v. State*, 696 A.2d 1334, 1337 (Del. 1997) cert. denied, 522 U.S. 938 (1997).

[21] *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

### i. The Buick's Window Tint Established Necessary Reasonable Suspicion that Morris Violated 21 Del. C. § 4313.

The window tint law in Delaware is not straightforward and requires some hopscotch.[22] Chapter 21, Section 4313(a) of the Delaware Code provides:

> [n]o person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture.[23]

Section 4313 also provides an exception for individuals who have a statement signed by a licensed medical, surgical, optometrist, or osteopathist verifying that tinted windows are medically necessary for the owner or usual operator."[24]

Delaware Courts have addressed window tint cases in the past. For example, in *State v. Trower*,[25] a police officer on patrol noticed a vehicle with dark tinted windows that prevented the officer from seeing the occupants inside.[26] The defendant moved to suppress evidence seized as a result of the stop, and argued that reasonable articulable suspicion of a window tint violation must be based on an observation from

---

[22] *Cannon*, 2017 WL 1277677 at *2.

[23] 21 *Del. C.* § 4313(a).

[24] 21 *Del. C.* § 4313(d).

[25] 931 A.2d 456 (Del. Super. Apr. 18, 2007).

[26] *Id.* at 457.

inside the vehicle looking out.[27] The defendant argued that, depending on lighting conditions inside or outside the vehicle, there could be a very significant difference in one's ability to see into the vehicle versus one's ability to see out.[28] In other words, the defendant in *Trower* argued that a window tint violation was unenforceable except as a secondary offense (whereby the officer could examine the windows from inside after a traffic stop based on a different offense) because inability to see through the windows from the outside does not provide a reasonable basis to believe the window tint statute is being violated.[29]

The *Trower* court rejected the defendants' arguments. The court stated that "a reasonable suspicion of a violation arises where an officer cannot see the occupants in the vehicle, is more persuasive" than the opposite view point argued by the defendant[30] and held that, "window tint which is so dark that one cannot see the occupants inside the vehicle creates a reasonable suspicion that it violates the standard."[31]

---

[27] *Id.* at 458.

[28] *Id.*

[29] *Id.* at 458-59 (In making these arguments, the defendant relied upon Federal Motor Vehicle Safety Standard 205, specifically the "Purpose" section, which provides that, inter alia, the Standard is intended to ensure a necessary degree of transparency in windows for driver visibility.).

[30] *Trower*, 931 A.2d at 459.

[31] *Id. See also State v. Friend*, 2008 WL 9004456, at *3 (Del. Super. Nov. 26, 2008) ("Window tint that prohibits an officer from seeing a vehicle's occupants is enough to suspect the tint exceeds the limits."(citing *Trower*, 931 A.2d at 459)).

10

Here, Officer Swan credibly testified at the suppression hearing that he stopped Morris' vehicle because the window tint was so dark he could not see any occupants in the vehicle, and that he verified the vehicle did not have a medical tint waiver before stopping the vehicle. Additionally, Officer Swan observed Morris' Buick on a sunny afternoon, where there was more than sufficient light for Officer Swan to view the Buick. Considering the totality of the circumstances, as viewed through the eyes of a reasonable, trained police officer, and combining objective facts with Officer Swan's subjective interpretation of those facts, the Court finds Officer Swan had reasonable suspicion of a window tint violation. Under *Trower*, his inability to see the occupants of the vehicle due to the dark tint, coupled with the absence of a medical waiver, are sufficient to justify a stop to investigate a possible window tint violation.[32]

**B. Officer Swan Demonstrated Probable Cause to Arrest and Search Morris and the Buick**

> *i. The Smell of Marijuana Gave Officer Swan Probable Cause to Lawfully Arrest Morris.*

The Court will now determine whether Officer Swan had probable cause to arrest Morris subsequent to the lawful traffic stop. Morris contends that his arrest was unlawful because Officer Swan lacked probable cause. Specifically, Morris argues Officer Swan had no factual information to warrant a reasonable belief that he had

---

[32] The Court further finds that Officer Swan also developed reasonable suspicion based on the Buick's color discrepancy listed on its registration.

11

committed a crime that justified an arrest.[33] After considering his arguments and the record, this Court finds Officer Swan had probable cause to lawfully arrest Morris.

Probable cause is evaluated based on the totality of the circumstances.[34] A police officer performing a lawful traffic stop may not deviate into the investigation of other offenses, unless the officer observes independent facts sufficient to justify an additional intrusion.[35] However, pursuant to 11 *Del. C. §* 1904, a police officer may make a warrantless arrest whenever the officer has reasonable grounds to believe that the person to be arrested has committed a felony or misdemeanor. When an officer detects an odor of contraband coming from a vehicle, an officer has probable cause to believe that the vehicle contains evidence of criminal activity and a warrantless search is proper.[36] The odor of "marijuana alone, if articulable and particularized, may establish...probable cause for officers to believe that contraband

---

[33] D. Mot. at ¶ 24.

[34] *State v. Dewitt*, 2017 WL 2209888, at *1 (Del. Super. May 18, 2017) (citing *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).

[35] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[36] *Dewitt*, 2017 WL 2209888, at *2. *See also Chisholm v. State*, 988 A.2d 937 (Table) 2010 WL 424241 at *2 (Del. Feb. 4, 2010) (holding that officer had probable cause, having smelled strong odor of marijuana while approaching passenger side of vehicle and observed individual behaving suspiciously); *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (recognizing that "[t]he strong odor of PCP establishes probable cause to believe the vehicle occupied by [defendant] contained evidence of criminal activity. Thus, the warrantless search of the [vehicle] was proper."); *Jenkins v. State*, 970 A.2d 154, 158–59 (Del. 2009) (holding that defendant's suspicious behavior and the strong odor of marijuana established probable cause to search defendant's car).

is present in the area from which the scent emanates."[37]

In this case, applying these principles, the Court finds Officer Swan had probable cause to arrest Morris for a drug offense. The Court finds no reason to doubt the credibility of Officer Swan's testimony, that he smelled the overwhelming odor of marijuana coming from the Buick. Based on Delaware precedent, the Court could find probable cause based on the odor of marijuana alone.

However, the totality of the circumstances involved in this case amount to more than the mere "odor" of marijuana. In addition to smelling the odor of marijuana, Officer Swan observed Morris acting in an admittedly nervous manner and almost immediately lit a cigarette. Officer Swan testified that based on his training and experience, cigarettes are used in attempting to mask narcotics and marijuana. Furthermore, Morris on multiple occasions, disregarded Officer Swan's instructions not to reach for his pocket and orders to get out of the Buick. A similar scenario was found in *Chisholm v. State*,[38] where our Supreme Court found probable cause was established by the defendant in that case clutching his jacket, while the strong odor of marijuana was smelled by law enforcement.[39] Therefore, applying the totality of the circumstances standard, this Court finds that Officer Swan had probable cause to

---

[37] *Dewitt*, 2017 WL 2209888, at *2 (citing *Fowler v. State*, 148 A.3d 1170 (Table) 2016 WL 5853434 at *2 n. 5 (Del. 2016) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)); *see also United States v. Simmons*, 2007 WL 3122169, at *3 (3d Cir. 2007).

[38] 988 A.2d 937, 2010 WL 424241, at *2 (Del. 2010); *see also Jenkins v. State*, 970 A.2d 154, 158-59 (Del. 2009).

[39] *Id.*

13

believe that Morris was in the process of committing a crime, resulting in Morris' lawful, warrantless arrest.

*ii. The Search of Morris' Person was Incident to His Arrest and Lawful.*

Because Officer Swan had probable cause to believe that Morris was in possession of marijuana, could he validly search Morris? Since the Court has found Officer Swan had probable cause to arrest Morris, it further finds that he conducted a lawful, warrantless search of Morris' person.

The Fourth Amendment generally requires officers to obtain a warrant before conducting a search.[40] There are several exceptions to this rule, however, one of which is a "search incident to arrest."[41] In a search incident to arrest, a police officer has the right to seize and search any person whom the officer observes breaking the law and the search is justified because of the lawful arrest.[42]

In this case, because Officer Swan possessed probable cause to arrest Morris for suspected marijuana possession, the Court finds that he was permitted to conduct a search of Morris' person incident to that lawful arrest. Thus, the Court finds the evidence collected pursuant to the search of Morris' person, incident to his arrest, will

---

[40] *Stafford v. State*, 59 A.3d 1223, 1231 (Del. 2012); *see also Williams v. State*, 962 A.2d 210, 216 (Del. 2008) (noting that warrantless seizures are presumed to be unreasonable under the Fourth Amendment).

[41] *Coley v. State*, 886 A.2d 1277 (Table), 2005 WL 2679329, at *1 (Del. Oct. 18, 2005).

[42] *Jones*, 745 A.2d at 872. *See also United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

not be suppressed.

### *iii. The Search of Morris' Buick was Lawful Incident to His Arrest and/or Pursuant to the Vehicle Exception.*

For the same reason as above, the Court finds that the search of Morris' Buick was lawful and incident to Morris' lawful arrest. Even if the search of Morris' Buick had not been found by the Court to be incident to a lawful arrest, the Court could still find the evidence admissible nonetheless under the "vehicle exception" to the warrant requirement.

Pursuant to the vehicle exception, a police officer may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of criminal activity.[43]

Here, as stated above, Officer Swan had probable cause to believe that the Buick contained marijuana because he smelled its odor coming from the Buick. Accordingly, the Court finds evidence seized pursuant the search of the Buick was seized incident to a lawful arrest and will not be suppressed.

### C. Officer Swan Acted Improperly by Failing to *Mirandize* Morris

In his final argument, Morris argues that his Fifth Amendment rights were violated because Officer Swan failed to issue him *Miranda* warnings subsequent to his arrest and before he made incriminating statements. Based on the evidence presented at the suppression hearing, coupled with Officer Swan's testimony and the

---

[43] *Ortiz v. State*, 862 A.2d 386 (Table), 2004 WL 2741185, at * 3 (citing *Carroll v. United States*, 267 U.S. 132, 153-54 (1925).

State's concession that Officer Swan did not mirandize Morris, the Court agrees with Morris and finds that all statements made by him after his arrest must be suppressed.

The law regarding *Miranda* is well established and clear. In short, one of *Miranda's* everlasting tenants is that law enforcement must apprise criminal defendants of their Fifth Amendment rights before any custodial interrogation of the individual is to commence.[44] An individual is in police custody for purposes of *Miranda* when a reasonable person in the suspect's position would feel a restraint on his freedom of movement to such an extent that the suspect would not be free to leave.[45] Our Supreme Court has stated that individuals temporarily detained pursuant to a traffic stop are not "in custody" for purposes of *Miranda* because of the non-coercive aspect of ordinary traffic stops.[46]

In this case, it is true that only a few minutes transpire between the beginning of the traffic stop and Morris being ordered out of the Buick and placed in hand-cuffs. However, the Court finds that the traffic stop ceased being simply a traffic stop when that happened. As stated above, it is undisputed by the parties that Officer Swan did

---

[44] *Garvey v. State*, 873 A.2d 291, 295-6 (Del. 2005) (citing *Thompson v. Keohane*, 516 U.S. 99, 107 (1983); *see also Miranda*, 384 U.S. at 471 (holding that warnings are "absolute prerequisite to interrogation"); *DeJesus v. State*, 655 A.2d 1180, 1189-90 (Del. 1995).

[45] *See McAllister v. State*, 807 A.2d 1119, 1126 (Del. 2002) (citing *Torres v. State*, 608 A.2d 731 (Del. 1992) (citations omitted) (a suspect is in custody for purposes of *Miranda* when a reasonable person in the suspect's position would feel a restraint on his freedom of movement to such an extent that the suspect would not feel free to leave).

[46] *Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010) (citing *Berkemer v. McCarty*, 468 U.S. 420, 423, (1984).

16

not properly read *Miranda* warnings to Morris upon his arrest or at anytime subsequent. Therefore, because Morris' Fifth Amendment rights were clearly violated by Officer Swan, the Court finds that all of Morris' statements made subsequently to his arrest are hereby suppressed.

## CONCLUSION

Morris' motion to suppress evidence and statements are hereby **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED.

Honorable William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
cc:   Sean A. Motoyoshi, Esquire
      Alexander W. Funk, Esquire